IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SARAH C. WHITE, Individually        )   CV No. 04-00500 (ACK/LEK)
and as Special Administrator        )   CV No. 05-00025 (ACK/LEK)
of THE ESTATE OF STEFAN             )
BOURNAKEL, Deceased, and as         )
Next Friend of NICOS ROBERT         )
BOURNAKEL, a minor,                 )
                                    )
                Plaintiff,          )
                                    )
vs.                                 )
                                    )
CAROL ANN SABATINO, BOB'S MAUI      )
DIVE SHOP, INC. dba MAUI DIVE       )
SHOP, a Hawaii Corporation;         )
3090 INCORPORATED, a Hawaii         )
Corporation; RONALD E.              )
WALLACH; JOHN DOES 1-20; JANE       )
DOES 1-20; DOE CORPORATIONS 1-      )
20; DOE PARTNERSHIPS 1-20; DOE      )
ASSOCIATES 1-20; DOE                )
GOVERNMENTAL AGENCIES 1-20;         )
and OTHER ENTITIES 1-20,            )
                                    )
            IN PERSONAM             )
                                    )
and M/V ALII NUI O.N. 567359        )
                                    )
            IN REM                  )
                                    )
                Defendants.         )
                                    )
_____    )
                                    )
RONALD E. WALLACH,                  )
                                    )
                Cross-Claimant,     )
                                    )
vs.                                 )
                                    )
CAROL ANN SABATINO, BOB'S MAUI      )
DIVE SHOP, INC. dba MAUI DIVE       )
SHOP, a Hawaii Corporation;         )

| | | |
|---|---|---|
| and 3090 INCORPORATED, a | ) | CV No. 04-00500 (ACK/LEK) |
| Hawaii Corporation, | ) | CV No. 05-00025 (ACK/LEK) |
| | ) | |
| Cross-Defendants. | ) | |
| _____ | ) | |
| | ) | |
| IN THE MATTER OF THE COMPLAINT | ) | |
| OF 3090, INCORPORATED, a | ) | |
| Hawaii Corporation as owners | ) | |
| of the M/V ALII NUI O.N. | ) | |
| 567359, FOR EXONERATION FROM | ) | |
| AND/OR LIMITATION OF | ) | |
| LIABILITY. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT WALLACH'S MOTION FOR SUMMARY JUDGMENT; DENYING LIMITATION PLAINTIFF 3090, INC.'S CLAIM THAT PLAINTIFF WHITE LACKS STANDING TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT; AND GRANTING PLAINTIFF WHITE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**PROCEDURAL BACKGROUND**

On July 15, 2004, Sarah C. White, Individually and as Special Administrator of the Estate of Stefan Bournakel, Deceased, and as Next Friend of Nicos Robert Bournakel, ("Plaintiff") filed a Complaint in the Circuit Court of the Second Circuit of the State of Hawaii against Carol Ann Sabatino ("Sabatino"); Bob's Maui Dive Shop, Inc. dba Maui Dive Shop ("Maui Dive Shop"); John Does 1-5; John Doe Corporations 1-5; Roe Non-Profit Organizations 1-5; and Roe Governmental Agencies 1-5 for all damages and costs that allegedly resulted from the February 13, 2004 automobile accident between Carol Ann Sabatino

2

and Stefan Bournakel ("Bournakel").

On August 16, 2004, the case was removed to Federal Court pursuant to 28 U.S.C. § 1441(b) from the Circuit Court of the Second Circuit State of Hawaii.  This case was docketed CV No. 04-0500 (ACK/LEK).

On November 9, 2004, Plaintiff filed the Second Amended Complaint adding Defendants 3090, Incorporated ("3090, Inc."), Ronald Wallach ("Wallach"); John Does 1-20; Jane Does 1-20; Doe Corporations 1-20; Doe Associates 1-20; Doe Governmental Agencies 1-20; and Other Entities 1-20 in personam and M/V Alii Nui, O.N. 567359 in rem ("Alii Nui").

On December 8, 2004, Maui Dive Shop, 3090, Inc. in personam, and Alii Nui in rem filed their Answer and affirmative defenses to Plaintiff's Second Amended Complaint.

On January 4, 2005, the Court issued an Order adopting the Magistrate's report and recommendation granting Plaintiff's Motion for Good Faith Settlement.  Defendant Sabatino was terminated as a party at that time.

On January 12, 2005, Defendant 3090, Inc. filed a Complaint for Exoneration from and/or Limitation of Liability as a Limitation Plaintiff ("Limitation Compl.") pursuant to 46 U.S.C. § 183.  This case was docketed CV No. 05-0025 (ACK/LEK).

On February 16, 2005, the parties stipulated to the Partial Dismissal with prejudice of all claims against Sabatino.

On March 7, 2005, Plaintiff filed an Answer to Limitation Plaintiff's Complaint.

On April 15, 2005, the parties stipulated to Consolidate CV No. 04-0500 (ACK/LEK) and CV No. 05-0025 (ACK/LEK) as Two Related Actions Pending Before the Court.

On May 26, 2005, Plaintiff filed a Motion for Leave to File a Third Amended Complaint.

On June 16, 2005, Defendant Ronald Wallach answered the Second Amended Complaint and filed a Cross-claim against Sabatino, Maui Dive Shop, and 3090, Inc..

On June 22, 2005, the Court issued an Order acknowledging compliance with Rule F(1) and F(2) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

On July 1, 2005, the Court issued an Order compelling the Limitation Plaintiff to come forward and inform the Court when it would be prepared to Publish Notice.  The Court issued an Order permitting a Third Amended Complaint to be filed by July 19, 2005.

On July 7, 2005, Cross-Defendants, Maui Dive Shop, 3090, Inc., and Alii Nui, filed their Answer and affirmative defenses to the Wallach's Cross-claims.

On July 18, 2005, Plaintiff filed the Third Amended Complaint ("Compl.").

On August 17, 2005, Defendant Wallach filed an Answer

4

to the Third Amended Complaint and Cross-claims against Maui Dive
Shop, 3090, Inc., and Sabatino.

On September 2, 2005, Defendants Maui Dive Shop, 3090,
Inc., and Alii Nui filed an Answer and affirmative defenses to
the Third Amended Complaint.

On September 2, 2005, the Limitation Plaintiff, 3090,
Inc., filed a Notice of Readiness.

On September 9, 2005, Cross-Defendants, Maui Dive Shop,
3090, Inc., and Alii Nui, filed their Answer and affirmative
defenses to Wallach's Cross-claims.

On September 12, 2005, the Court held a hearing for the
Limitation Plaintiff to Show Cause why its case should not be
dismissed.  The Court did not dismiss the claim.

On October 3, 2005, the Court issued an Order directing
issuance of notice, publication thereof and granting an
injunction to restrain and stay all other claims against
Limitation Plaintiff in other courts regarding the February 13,
2004 incident.

On October 25, 2005, Wallach filed a Motion for Summary
Judgment against Plaintiff's claims ("Motion 1").

On December 14, 2005, Plaintiff filed a Motion for
Partial Summary Judgment regarding the Limitation Plaintiff's
Complaint ("Motion 2").  Defendant Wallach joined this motion on
December 19, 2005.

On January 5, 2006, Plaintiff filed a Statement of No Position to Motion 1.   Limitation Plaintiff 3090, Inc. filed a Memorandum of Points and Authorities in response to Motion 2 ("Opposition to Motion 2").   Cross-Defendants, Maui Dive Shop and 3090, Inc., filed a Memorandum of Points and Authorities to Oppose Motion 1 ("Opposition to Motion 1").

On January 12, 2006, Wallach filed a Reply Memorandum supporting Motion 1 ("Reply to Motion 1").

On January 13, 2006, Plaintiff filed a Reply Memorandum supporting Motion 2 ("Reply to Motion 2").

## FACTUAL BACKGROUND[1]

The Court addresses two motions in this Order stemming from the tragic automobile accident that occurred on February 13, 2004 at approximately 1:35 p.m., between motorists Carol Ann Sabatino and Stefan Bournakel.   Bournakel suffered traumatic injuries and died as a result of this accident.   Sabatino was intoxicated at the time of the accident.

Prior to the accident, Sabatino was a passenger on a cruise vessel named the Alii Nui.   Defendant 3090, Inc. owns the Defendant M/V Alii Nui.   (Motion 2, Concise Statement of Facts ("CSF") 1; Opposition to Motion 2, Concise Statement of Facts 1).   Defendant Maui Dive Shop owns Defendant 3090, Inc..   (Motion 2,

---

[1] The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

6

CSF 1; Opposition to Motion 2, CSF 1).  On February 13, 2004, Bob
Chambers, President, Sandra Chambers, Vice President, and Jeff
Strahn ("Strahn") were officers of 3090, Inc.. (Motion 2, CSF 2;
Opposition to Motion 2, CSF 2).  Strahn, the Vice President and
General Manager of Maui Dive Shop, supervised the Alii Nui
operations.  (Motion 2, CSF 2; Opposition to Motion 2, CSF 2).
Prior to Maui Dive Shop's purchase of 3090, Inc. and the Alii Nui
in October 2003, Strahn attended the Alii Nui morning cruise as
part of his due diligence regarding the operation of the Alii Nui
and the type of cruises it offered.  (Motion 2, CSF 6; Opposition
to Motion 2, CSF 6).  Chris Dennis ("Dennis") is a manager of
3090, Inc. and the Captain of the Alii Nui.  (Motion 2, CSF 4;
Opposition to Motion 2, CSF 4).  Dennis captained the Alii Nui on
the morning of February 13, 2004.  (Motion 1, CSF 2; Opposition
to Motion 1, CSF 2).  Diane Mulkey ("Mulkey"), a former police
officer, served as a crew member on the Alii Nui on February 13,
2004.  (Opposition to Motion 2, CSF 18).

     On February, 13, 2004, Defendant Dr. Ronald Wallach,
his wife, his brother-in-law, and his sister-in-law all attended
the morning snorkeling cruise on the Alii Nui. Defendants 3090,
Inc. and Maui Dive Shop allege Dennis believed that Sabatino
arrived at the dock with the Wallach party.  (Opposition to
Motion 2, CSF 9).  They allege that Dennis thought that Sabatino
came with the Wallach party because Wallach told Dennis that he

7

had brought along Sabatino as an extra when they all first met. (Opposition to Motion 1, CSF 9).  Defendant Wallach does not contest this allegation.

The Alii Nui, primarily a snorkeling cruise, included the service of unlimited food and alcohol with the ticket. (Motion 2, CSF 7; Opposition to Motion 2, CSF 7).  There was no prohibition on the amount of alcohol that a passenger could consume, unless the crew stopped serving him.  Id.  Plaintiff alleges that it was advertised that the Alii Nui cruise had an "open bar."  (Motion 2, CSF 7).  3090, Inc. disagrees that the cruise was advertised as "open bar" or "all you can drink". (Opposition to Motion 2, CSF 7).  Defendants 3090, Inc. and Maui Dive Shop allege that an inspector from the Maui County Liquor Commission informed Strahn that "the practice of including liquor within the price of a ticket aboard the vessel" did not violate the Maui County Liquor Rules.  Strahn Decl. ¶ 3.

Plaintiff alleges that there were no written beverage training materials and that the crew was not properly trained in beverage service by 3090, Inc. or Maui Dive Shop.  (Motion 2, CSF 5).  3090, Inc. contends that Mulkey received beverage training, although there were no written training materials.  (Opposition to Motion 2, CSF 5).  Plaintiff contends that this training only consisted of watching others.  (Motion 2, CSF 5).  3090, Inc. alleges that Mulkey, a former police officer, had been previously

8

trained to identify the signs of intoxication.  (Opposition to Motion 2, CSF 18).  3090, Inc. contends that Captain Dennis had discussions with the crew about being aware of the signs of intoxication.  (Opposition to Motion 2, CSF 5,18(Dennis Depo. at 27:25-28:10).  3090, Inc. asserts that Dennis attended a mandatory training course given by the Maui County Liquor Commission.  (Opposition to Motion 2, CSF 18).[2]

On the February 13, 2004 morning cruise, the crew of the Alii Nui began serving food and alcohol to the passengers at 11:00 a.m. and stopped serving at 12:30 p.m..  (Motion 2, CSF 8; Opposition to Motion 2, CSF 8;).  There were sixteen total passengers on the Alii Nui on the morning cruise.  (Motion 1, Ex. J (Officer Correa Police Report) at 13).  Plaintiff alleges that at least three people, Sabatino, Taina Kelly, and David Kelly, were intoxicated on the cruise, but the crew continued serving alcohol to them.  (Motion 2, CSF 9).  Defendant 3090, Inc. alleges that Dennis and Mulkey noticed signs that Taina Kelly was intoxicated and they stopped service of alcohol to her at that time.  (Opposition to Motion 2, CSF 10). Plaintiff alleges that no crew member "ever suggested that Taina Kelly had too much to drink or that she should stop drinking."  (Motion 2, CSF 10).

Defendant 3090, Inc. alleges that not one person

---

[2]  As Plaintiff's counsel argued at the January 23, 2006 hearing before this Court, there does not appear to be any factual support for this claim. Neither of the sources cited in the Opposition to Motion 2, Concise Statement of Facts 18 support this claim.

observed signs of Sabatino's intoxication while on board the Alii
Nui.  (Opposition to Motion 2, CSF 9).  Plaintiff concedes that
Captain Dennis testified that he did not believe Sabatino showed
signs of intoxication, but alleges that he did observe unusual
and bizarre behavior in Sabatino.  (Motion 1, Ex. 4 (Dennis
Depo.) 11:20-12:21).  Mulkey did not observe signs that Sabatino
was intoxicated.  (Motion 1, CSF 2; Opposition to Motion 1, CSF
2).  Plaintiff alleges that Sabatino was intoxicated on the ship,
drank no alcohol before or after being on the Alii Nui, had a
blood alcohol content ("BAC") of .206 thirty-five minutes after
leaving the ship, and a BAC of .179 two and a half hours after
leaving the ship.  (Motion 2, CSF 12).  3090, Inc. contends that
Sabatino had three drinks on the vessel, never showed signs of
intoxication on the ship, and must have consumed alcohol after
leaving the ship.  (Opposition to Motion 2, CSF 12).  There was
no evidence of alcohol containers found at the accident site.
(Reply to Motion 2, Ex. Q (Maui County Police Department Property
Report)).

        Defendants 3090, Inc. and Maui Dive Shop allege that
Dennis was concerned about Sabatino's well-being at the end of
the cruise and he asked Wallach if she would be alright.
(Opposition to Motion 1, CSF 9; Motion 1, Ex. 4 (Dennis Depo.)
13:18-14:5).  Defendants 3090, Inc. and Maui Dive Shop allege
that Wallach assured Dennis by telling him "Don't worry.  We'll

take care of her." (Opposition to Motion 1, CSF 10). Wallach alleges that Captain Dennis "specifically admitted that the issue of providing transportation for Sabatino or whether Dr. Wallach [said] he would be her "designated driver" never came up." (Motion 1, CSF 4). Wallach never stated to anyone that he would be her "designated driver". (Motion 1, CSF 7; Opposition to Motion 1, CSF 7). No other passenger heard Wallach state that he would be Sabatino's designated driver. (Motion 1, CSF 8; Opposition to Motion 1, CSF 8). Wallach alleges that after the passengers disembarked, they were standing in a group about twenty or thirty feet from the dock. (Motion 1, Ex. 2 (Wallach Depo.) 91:23-92:22). Wallach testified that his wife hugged Sabatino good bye and Sabatino walked off to her own vehicle. Id. Wallach also testified that his wife went to hug Sabatino after she was in her own car. (Motion 1, Ex. 2 (Wallach Depo.) 90:15-19. Wallach alleges that Sabatino's vehicle was parked approximately 150 feet from where the boat was moored. Id. Wallach alleges that Sabatino then drove off before his group departed. (Motion 1, Ex. 2 (Wallach Depo.) 93:15,16). Approximately 25 minutes later, Sabatino's vehicle struck another vehicle, killing the driver and only occupant, Stefan Bournakel.

## **STANDARD**

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary
judgment is therefore appropriate when the "pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue of material fact and that the moving party is
entitled to judgment as a matter of law."[3]  Fed. R. Civ. P.
56(c); Querubin v. Thronas, 107 Haw. 48, 56, 109 P.3d 689,697
(Haw. 2005).

        "A fact is 'material' when, under the governing
substantive law, it could affect the outcome of the case.  A
genuine issue of material fact arises if 'the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party.'"[4]  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav.
Ass'n, 310 F.3d 1188, 1194 (9th Cir. 2002) (quoting Union Sch.
Dist. v. Smith, 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal
citations omitted).  Conversely, where the evidence "could not
lead a rational trier of fact to find for the nonmoving party,
there is no 'genuine issue for trial.'"  Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting

---

        [3] Affidavits made on personal knowledge and setting forth facts as would
be admissible at trial are evidence that a court may consider when determining
whether a material issue of fact exists.  Fed. R. Civ. P. 56(e).  Legal
memoranda and oral argument are not evidence and do not create issues of fact.
See British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

        [4] Disputes as to immaterial issues of fact do "not preclude summary
judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1478 (9th
Cir. 1986).

First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Id. at 325. All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party. See, e.g., T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). So, too, the court's role is not to make credibility assessments. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. Id. at 250-51.

Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. See Celotex, 477 U.S. 322-23; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th

13

Cir. 2002); see also T.W. Elec. Serv., 809 F.2d at 630.  The

nonmoving party must instead set forth "significant probative

evidence" in support.  T.W. Elec. Serv., 809 F.2d at 630.

Summary judgment will thus be granted against a party who fails

to demonstrate facts sufficient to establish an element essential

to his case when that party will ultimately bear the burden of

proof at trial.[5]  See Celotex, 477 U.S. at 322.

## DISCUSSION

**I.   Wallach's Motion for Summary Judgment ("Motion 1")**

**A.   Procedural Consideration**

        The Court must first address a preliminary matter

regarding the posture of this motion.  Defendant Wallach filed

this Motion for Summary Judgment against Plaintiff's claims.  He

also filed cross-claims against Defendants 3090, Inc., Maui Dive

Shop, and the Alii Nui (collectively "Cross-Defendants").

Plaintiff filed a statement of no position regarding Motion 1.[6]

---

        [5] When the moving party also has the burden of proof in an element of a
claim, it has the "burden of establishing a prima facie case on the motion for
summary judgment." UA Local 343 of the United Ass'n of Journeymen v. Nor-Cal
Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995).  Upon showing a prima
facie case, the burden of production shifts and it becomes "incumbent on [the
nonmoving party] to 'set forth specific facts showing that there is a genuine
issue for trial,' by evidence cognizable under that rule." Id. (quoting Fed.
R. Civ. P. 56(e)); Charles Alan Wright et al., Federal Practice & Procedure §
2727 (3d ed. 1998).  The ultimate burden of persuasion as to the non-existence
of any genuine issues of material fact remains on the moving party. Nissan
Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000);
accord Dye v. United States, 121 F.3d 1399, 1409 (10th Cir. 1997).

        [6] Plaintiff's counsel explained at the January 23, 2006 hearing that a
statement of no position was filed because he wanted to be consistent with his
arguments, and that he could not figure out which of the Defendants was
telling the truth.  Counsel also stated that he would be happy to take
Defendant Wallach's money for the Plaintiff family, and acknowledged that the

The Cross-Defendants filed an Answer and affirmative defenses to Wallach's cross-claims, filed an Opposition to Motion 1, but did not file a cross-claim against Wallach.  In their affirmative defenses, Cross-Defendants assert that any alleged injury to Wallach was caused by Wallach or other third parties.  (Cross-Defendants' Answer and Affirmative Defenses to Cross-Claim of Wallach ¶¶ 11, 15, and 18).  Cross-Defendants also pled that the contributory negligence of Wallach or others ought to mitigate any right of recovery that Wallach might have.[7]  Id. at ¶ 18.  The question the Court faces is, whether a co-defendant, who is also a cross-defendant, but not a cross-claimant, can oppose another co-defendant's motion for summary judgment when the plaintiff chooses not to oppose the motion.

In Gump v. Wal-mart Stores, Inc., the Hawaii Supreme Court determined that a co-defendant could not assert a right to contribution from another co-defendant, who had previously reached a settlement agreement with the plaintiff, because it had never filed a cross-claim against the settling co-defendant.  93 Haw. 417, 5 P.3d 407 (Haw. 2000).  The court's conclusion relied

---

issue of apportionment could be raised at another time.

[7] In their affirmative defenses to the Plaintiff's Third Amended Complaint filed September 2, 2005, Cross-Defendants similarly asserted that any alleged injury to Plaintiff was caused by other third parties. (Defendants' Answer and Affirmative Defenses to Third Amended Compl. ¶¶ 29,33, and 36).  Cross-Defendants also pled that the contributory negligence of others ought to mitigate any right of recovery that Plaintiff might have.  Id. at ¶ 36.

on the Uniform Contribution Among Tortfeasors Act ("UCATA") which defines joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."  HRS § 663-11 (1993).  "The right of contribution exists among joint tortfeasors."  HRS § 663-12.  The last paragraph of HRS § 663-12 provides:

> When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares, subject to section 663-17.

Id.  "As among joint tortfeasors who in a single action are adjudged to be such, the last paragraph of section 663-12 applies only if *the issue of proportionate fault is litigated between them by pleading in that action*."  HRS § 663-17(c)(emphasis added).  The court reasoned that the co-defendant had lost its right to contribution because it had never raised the issue of contribution in its pleadings and the issue was not litigated between the parties.  Gump, 93 Haw. at 422, 5 P.3d at 412.  The co-defendant never made a cross-claim, failed to object to the settlement and only sought a right to contribution in a motion in limine right before the trial.  Id.  Here, the Cross-Defendants may not have brought a cross-claim against Wallach, but they have pled that Wallach's negligence was an intervening cause to any claim he might have against them and that any damages from the

16

cross-claim should therefore be mitigated.  They have also pled in their Answer to Plaintiff's Third Amended Complaint, that unknown third parties were responsible for injuries to the Plaintiff and any damages from the claim should also be mitigated.

Federal district courts have not reached a consensus as to whether a co-defendant may oppose another co-defendant's motion for summary judgment against a plaintiff's claims in the absence of pending cross-claims.  In Guthrie v. Radiac Abrasives, Inc., the court permitted a co-defendant to challenge another co-defendant's motion for summary judgment, even though the plaintiff did not oppose the motion and no pending cross-claims existed.  1990 WL 193047, at *2 (D.N.J. 1990).  The court accepted and evaluated the co-defendant's opposing arguments without comment.  In the Eastern District of Pennsylvania, the court relied on numerous arguments made by a co-defendant, without a pending cross-claim, in denying another co-defendant's motion for summary judgment.  See Parker v. Bell Asbestos Mines, Ltd., et al., 607 F. Supp. 1397, 1398, 1399 n. 1, and 1403 (E.D. Pa. 1985).  The plaintiff did oppose the motion, but "the most strenuous opposition [came] from co-defendants."  Id. at 1399 n. 1.  However, in Maine, a court concluded that in the absence of an objection from a plaintiff and in the absence of cross-claims against the movant, another co-defendant could not "be the sole,

17

successful opposition to another co-defendant's motion for
summary judgment." 2000 WL 761895, at *1 (D. Me. 2000). The
court reasoned that the underlying principles of Federal Rule of
Civil Procedure 56 dictate the avoidance of trials when
appropriate and granting of summary judgment whenever legally
proper. Id. The court then concluded it would be improper to
maintain a claim that the plaintiff thought was no longer viable
in opposition to the Rule 56 principle of avoiding trials. Id.
Here, the Plaintiff has not stated its claim against Wallach is
no longer viable, but it took no steps to oppose the motion for
summary judgment. In the absence of a settled precedent or
consensus among other courts regarding this procedural
determination, this Court also considers a party's right to amend
pleadings to conform to evidence.

Rule 15(b) of the Hawaii Rules of Civil Procedure
states:

> [w]hen issues not raised by the pleadings are tried by
> express or implied consent of the parties, they shall
> be treated in all respects as if they had been raised
> in the pleadings. Such amendment of the pleadings as
> may be necessary to cause them to conform to the
> evidence and to raise these issues may be made upon
> motion of any party at any time, even after judgment;
> but failure so to amend does not affect the result of
> the trial of these issues. If evidence is objected to
> at the trial on the ground that it is not within the
> issues made by pleadings, the court may allow the
> pleadings to be amended and shall do so freely when the
> presentation of the merits of the action will be
> subserved thereby and the objecting party fails to
> satisfy the court that the admission of such evidence

18

would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

HRCP § 15(b); See Hawaii Broadcast Company, Inc. v. Hawaii Radio, Inc., 82 Haw. 106, 919 P.2d 1018 (Haw. Ct. App. 1996)(considering affirmative defenses raised by a defendant in opposition to a plaintiff's motion for summary judgment, that were not raised previously).  In Hawaii Broadcast Company, the court observed that affirmative defenses should be raised in a pleading, but if the defenses are not objected to and there is no surprise claimed, then it is fair for the court to consider them.  Id. at 112, 919 P.2d at 1024.  As a result, the court granted the plaintiff's summary judgment motion on liability, but deferred its ruling on damages to consider the defendant's affirmative defenses regarding mitigation.  Id. at 113, 919 P.2d at 1024.

Here, the Cross-Defendants filed an Answer and affirmative defenses that already asserted intervening causation by Defendant Wallach, and requested mitigation of any damages from the cross-claims.  They also filed an Answer and affirmative defenses claiming intervening third party negligence and mitigation of any damages in response to the Plaintiff's Third Amended Complaint.  While the Cross-Defendants did not specifically name Wallach as the culpable third party, they certainly have an interest in keeping him as a potential joint tortfeasor under the theories advanced in their answers to both

19

the Plaintiff's Complaint and Wallach's Cross-claims.

Neither Plaintiff nor Defendant Wallach have objected on these grounds to the Cross-Defendants' Opposition to Motion 1. At the January 23, 2006 hearing, the Court asked Wallach's counsel "if the finder of fact finds that Dr. Wallach ... has a responsibility to both the ship, 3090, Inc., as well as the victim ... would they be joint tortfeasors?". Counsel for Defendant Wallach agreed that 3090, Inc. was probably asserting that the Defendants would be joint tortfeasors. He did not object and showed no surprise at this proposition. Defendant Wallach also vigorously defended his position in the Reply to Motion 1 against Cross-Defendants' Opposition to Motion 1 without making any objection to Cross-Defendants' submission of an opposing argument. In sum, the Court concludes to deny Cross-Defendants the right to oppose Motion 1 would unfairly deprive them of the right to contribution by a joint tortfeasor if the issue of apportionment of damages arises in the future, especially in the absence of any objection or showing of surprise. The Court finds that this right to oppose the motion is sustainable under the UCATA and Hawaii Rule of Civil Procedure 15(b).[8]

Defendant Wallach has moved for summary judgment on

---

[8]   In any event, Cross-Defendants may make a motion to amend their pleadings at any time, even after judgment, to conform their pleadings with the evidence.  The Court grants leave to Cross-Defendants to amend their pleadings pursuant to HRCP § 15(b).

Plaintiff's claim against him asserting that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.  Wallach claims that, under Hawaii law, a voluntary designated driver does not undertake a duty for which he may be held liable.  If correct, a designated driver is not liable for the conduct of the intoxicated person, even if he failed to drive the person as promised.  In the alternative, Wallach contends that he never volunteered to act as Sabatino's designated driver, and there is no genuine issue of material fact.

B.   Negligence

        As both parties have acknowledged, there is limited jurisprudence regarding designated driver liability in the United States.  The Court must decide whether there are legal grounds to justify a negligence claim against designated drivers.  "Under common law, a person who has sustained injuries due to the negligent conduct of another may recover against the tortfeasor provided that the negligent behavior was the proximate cause of the injuries suffered."  Ono v. Applegate, 62 Haw. 131, 137, 612 P.2d 533, 538 (Haw. 1980)(citing Fujioka v. Kam, 55 Haw. 7, 10, 514 P.2d 568, 570 (Haw. 1973); Restatement (Second) of Torts § 281 (1965)).  A successful negligence claim must satisfy the following four elements:

        1.  A duty, or obligation, recognized by the law,
        requiring the actor to conform to a certain standard of

conduct, for the protection of others against
unreasonable risks.

2.  A failure on [the actor's] part to conform to the
standard required....

3.  A reasonable close causal connection between the
conduct and the resulting injury....

4.  Actual loss or damage resulting to the interests of
another....

Ono, 62 Haw. at 137, 612 P.2d at 538-39.  For Plaintiff's claim
against Wallach to survive this motion for summary judgment,
there must be evidence to support each element.  If there are
genuine issues of material fact concerning whether any element is
satisfied, then the Court must deny Motion 1.

i.    Designated Driver Duty

a.    Case Law and Restatement 324A Analysis

        "Duty is not sacrosanct in itself, but only an
expression of the sum total of those considerations of policy
which lead the law to say that a particular plaintiff is entitled
to protection."  Johnston v. KFC Nat'l Management Co., 71 Haw.
229, 232, 788 P.2d 159, 161 (Haw. 1990)(citation omitted).
Hawaii courts "are reluctant to impose a new duty upon members of
our society without any logical, sound, and compelling reasons
taking into consideration the social and human relationships of
our society."  Johnston, 71 Haw. at 232-33, 788 P.2d at 161; see
also Birmingham v. Fodor's Travel Publications, Inc., 73 Haw.
359, 370-71, 833 P.2d 70, 76 (Haw. 1992).

In <u>Ono</u>, the Hawaii Supreme Court did impose a new duty on commercial suppliers of alcohol to third parties injured by intoxicated drivers in the absence of direct legislative action. 62 Haw. at 134, 612 P.2d at 537.  The court concluded that because the alcohol supplier violated a state liquor control law,[9] it could be liable to an injured third party, even in the absence of specific state dram shop legislation.  The <u>Ono</u> decision also relied on judicial and legislative trends imposing a duty on tavern owners throughout the country.  The court observed that the majority of states had, either through dram shop legislation or judicial holdings, departed from the common law practice that limited liability to the intoxicated individual.  <u>Id</u>. at 134-35, 612 P.2d at 537-38.

By way of contrast, the same court declined to impose a duty upon a social host or an employer that served alcohol to an individual who, as a result, injured a third party in an automobile accident.  <u>Johnston</u>, 71 Haw. at 238, 788 P.2d at 164. The court, after evaluating national legislative and judicial trends, economic factors, and the potential for increased litigation, decided that in the absence of legislative mandate, it would not impose a new duty on social hosts or employers that served alcohol.  <u>Id</u>. at 234-38, 288 P.2d at 162-64.

---

[9]  When <u>Ono</u> was decided in 1980, Hawaii Revised Statute § 281-78(a)(2)(B)(1976) stated in relevant part "[a]t no time under any circumstances shall any liquor: ... be sold or furnished by any licensee to ... any person at the time under the influence of liquor....”

Lacking legislative or Hawaii judicial comment regarding a designated driver duty, the parties have identified a limited number of somewhat similar cases for the Court's consideration.[10]  The Supreme Court of Alaska and a Connecticut state court both found a designated driver duty to a third party.[11]  In <u>Mulvihill</u>, the court concluded that the designated driver had a duty under the Restatement (Second) of Torts § 324A (1965) as a "volunteer" without explaining its rationale.  859 P.2d at 1313.  In <u>Morin v. Keddy</u>, a volunteer designated driver transported other intoxicated individuals as far as his own house.  1993 WL 451449, *3(Conn. Super. Ct. 1993).  He then exited the vehicle and allowed one of the intoxicated individuals to take the keys, and drive away, causing a fatal automobile accident.  <u>Id</u>.  The <u>Keddy</u> court did not engage in an analysis of the Restatement (Second) of Torts § 324A, but found a designated driver duty to third parties under a Connecticut foreseeability test.[12]  <u>Id</u>.

---

[10]  While none of the cases have precedential value, some are unpublished, and each may be distinguished from the present case on factual grounds, the Court finds them helpful as it considers this novel issue at hand.

[11]  <u>See Mulvihill v. Union Oil Co. of California</u>, 859 P.2d 1310 (Alaska 1993)(holding that a volunteer designated driver had undertaken a duty to third parties, but had discharged that duty upon the delivery of the intoxicated individual to his house); <u>Morin v. Keddy</u>, 1993 WL 451449 (Conn. Super. Ct. 1993).

[12]  "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised." <u>Keddy</u>, 1993 WL 451449, *3 (<u>quoting</u> <u>Orlo v. Connecticut, Co.</u>, 128 Conn. 231, 237, 21 A.2d 402 (Conn. 1941)).

Defendants Maui Dive Shop and 3090, Inc. cite <u>Morales</u> <u>v. Dudley</u>, 2003 WL 22205896 (Cal. Ct. App. 2 Dist. 2003) to support the existence of a designated driver duty to third parties.  In <u>Morales</u>, the court found that an individual's promise to an intoxicated driver's wife, that he would not allow her husband to drive, constituted an undertaking as defined by Restatement (Second) Torts § 324A.  <u>Id</u>. at *5.  The court interpreted Section 324A to create "liability ... where failure to exercise reasonable care in performing the undertaking increases the risk of the harm suffered by a third party...." <u>Id</u>. at *4.

In contrast, the Wisconsin Supreme Court and a New York state court declined to recognize a new duty for volunteer designated drivers.  In <u>Stephenson v. Universal Metrics, Inc.</u>, the most factually analogous case to the one at hand, an individual allegedly acquiesced to a bartender's request to serve as an intoxicated co-worker's designated driver.  251 Wis. 2d 171, 181-82 (Wis. 2002).  There was a factual dispute as to whether the individual verbally agreed to drive or just nodded his head.  The court concluded that either conduct was sufficient to constitute a gratuitous undertaking under the Section 324A framework.  <u>Id</u>. at 189.  Ultimately, the individual consciously chose not to drive the intoxicated co-worker, who later caused a fatal accident.  <u>Id</u>. at 184-85.  Despite concluding that a new

duty existed under the Section 324A framework, the court did not extend liability to the volunteer for the third party's injuries because of an overriding Wisconsin statute and public policy concerns.[13]  Id. at 191.  The court identified three public policy factors supporting its decision to prevent tort liability: 1) "the injury is too wholly out of proportion to the tortfeasor's culpability"; 2) "allowing recovery would place too unreasonable a burden upon the tortfeasor"; and 3) "allowing recovery would have no sensible or just stopping point." Stephenson, 251 Wis. 2d at 198.

In the New York case, Mulvey v. Cuviello, the court declined to extend liability to a designated driver.  180 Misc. 2d 139 (N.Y. Sup. Ct. 1999).  Rejecting the foreseeability argument from Connecticut's Keddy case, the court concluded that public policy dictated against finding liability.  Id. at 144. The court also explained that the legislature had been active in this arena and it would not interfere by creating a new duty.[14] Id. at 145.  Furthermore, the court worried that to assign liability to the designated driver would "discourage and deter

_____

[13] Wis. Stat. § 125.035(2) provides that "a person is immune from civil liability arising out of the act of procuring alcohol beverages for or selling, dispensing or giving away alcohol beverages to another person." There is no similar statute in Hawaii, and the statute actually contradicts a Hawaii Supreme Court decision.  See Ono, 62 Haw. at 136, 612 P.2d at 538.

[14]  The state legislature had previously enacted dram shop regulations, restricted the sale of alcohol, and penalized the abuse of motor vehicle privileges.

others from serving in that capacity." Id. at 144.

"Hawaii case law relating to the voluntary assumption of duty or undertaking has generally followed the Restatement (Second) of Torts." Tabieros v. Clark Equipment Co., 85 Haw. 336, 358, 944 P.2d 1279, 1301 (Haw. 1997).  The following Hawaii decisions have applied Restatement 324A, albeit under facts not involving designated drivers: Tabieros, 85 Haw. at 358-59, 944 P.2d at 1301-02 (declining to hold an equipment manufacturer liable for injuries to a dock worker, citing no evidence that the manufacturer had undertaken a duty to retrofit its equipment for the safety of third parties); Doe v. Grosvenor Properties (Hawaii) Ltd., 73 Haw. 158, 170, 829 P.2d 512, 519 (Haw. 1992)(declining to hold an elevator repair and maintenance company liable to a victim of an assault, that took place in the elevator, citing no evidence that the company had undertaken a duty to maintain the elevator alarm); Fink v. Kasler Corporation, 3 Haw. App. 270, 273, 649 P.2d 1173, 1175 (Haw. Ct. App. 1982)(reversing a trial court's decision that a contractor could not be liable to a motorist for removing a "STOP" sign when the contractor had contracted with the State to post and maintain traffic signs at its construction sites).

Restatement § 324A states:

[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to

27

the third person for physical harm resulting from his failure to exercise reasonable care to perform[15] his undertaking, if

    (a) his failure to exercise reasonable care increases the risk of such harm, or

    (b) he has undertaken to perform a duty owed by the other to the third person, or

    (c) the harm is suffered because of reliance of the other or the third person on the undertaking.

Restatement (2nd) of Torts § 324A.[16]

The following illustration of the Restatement 324A framework helps to illuminate the rationale for finding a designated driver duty to third parties.  When one promises to undertake the designated driver responsibilities for an intoxicated person, he should recognize that this undertaking is

---

[15] "The reporter for this edition of the Restatement, by a letter to counsel furnished to this court, has verified that the word 'protect' which appears at this point is a typographical error and should read 'perform.'" <u>Hill v. United States Fidelity and Guaranty Company</u>, 482 F.2d 112, 115 n. 5 (5th Cir. 1970).

[16] "The rule stated in [Section 324A] parallels the one stated in § 323, as to the liability of the actor to the one to whom he has undertaken to render services.  This section deals with the liability to third persons." Restatement § 324A, comment a.  Restatement § 323 states:

    One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
        (a) his failure to exercise such care increases the risk of such harm, or
        (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (2nd) of Torts § 323.  It is possible under certain circumstances that a designated driver may undertake a duty to a commercial alcohol supplier when it promises to care for an intoxicated driver.  However, Cross-Defendants 3090, Inc. and Maui Dive Shop have not raised this claim and accordingly the Court will not address it.

for the protection of third parties, such as other drivers.  He
would be liable for injuries to this third party if his failure
to exercise reasonable care in performing the designated driver
duty a) increased the risk of the harm; or b) he undertook a duty
that was otherwise owed by someone else, such as the commercial
alcohol supplier; or c) the harm was suffered because parties
such as the alcohol supplier or the victim driver relied on his
undertaking.

        In the Caveat that follows Restatement § 324A, the
American Law Institute expressed "no opinion as to whether the
making of a contract or gratuitous promise, without in any way
entering performance, is a sufficient undertaking to result in
liability under the rule stated...."  <u>See</u> Restatement (2nd) of
Torts § 324A, Caveat 1.  The comment on the Caveat explains:

> there is no essential reason why the breach of a
> promise, relied upon by the promisee or by a third
> person, with resulting physical harm to the latter,
> should not result in liability in tort.[17]  Again,
> however, as under § 323, the question is left open in
> the absence of sufficient decisions.

Restatement (2nd) Torts § 324A, comment f.  However, the "ancient
distinction between 'misfeasance' and 'non-feasance' has
persisted where the harm results to third persons," and decisions

---

[17] Courts have found a promisor liable in the following cases: <u>Dudley
v. Victor Lynn Lines</u>, 138 A.2d 53, 59-61 (N.J. Super. Ct. App. Div. 1958)
(reversed on other grounds)(unfulfilled promise to seek medical aid for a
heart attack victim); <u>Johnson v. Souza</u>, 176 A.2d 797, 798-99 (N.Y. App. Div.
1961)(unfulfilled promise to put rock salt on icy steps); <u>Mixon v. Dobbs
Houses, Inc.</u>, 254 S.E.2d 864, 865 (Ga. Ct. App. 1979)(unfulfilled promise to
inform employee that wife was in labor).

resting on the principle have not been overruled.  Id.  As a result, courts have been quite liberal in construing even the most "trivial and technical acts of the promisor" as sufficient evidence of an undertaking.  Id.  As explained by Dean Prosser:

> If there is no duty to go to the assistance of a person in difficulty or peril, there is at least a duty to avoid any affirmative acts which make his situation worse.  When we cross the line into the field of "misfeasance," liability is easier to find....
>
> The result of all this is that the good Samaritan who tries to help may find himself mulcted in damages, while the priest and the Levite who pass by on the other side go on their cheerful way rejoicing.  It has been pointed out often enough that this in fact operates as a real, and serious, deterrent to the giving of needed aid....
>
> This idea of voluntary assumption of duty by affirmative conduct runs through a variety of cases. Just when the duty is undertaken, when it ends, and what conduct is required, are nowhere clearly defined, and perhaps cannot be.  Following an early, leading decision in New York, never overruled, a large body of case law has been built up, which holds that a mere gratuitous promise to render service or assistance, with nothing more, imposes no tort obligation upon the promisor, even though the plaintiff may rely on the promise and suffer damage because of that reliance....
>
> Due to its apparent harshness, however, the old rule has served chiefly as a point of departure; and very little is required for the assumption of the duty.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56 at 378-79 (5th ed. 1984).

In Hawaii, an injured plaintiff claimed that an equipment manufacturer assumed a general duty to retrofit all of its Series 510 straddle carriers for the safety of third parties

under Restatement 324A. <u>Tabieros</u>, 85 Haw. at 358, 944 P.2d at
1301. The plaintiff introduced evidence that the manufacturer's
safety committee had discussed a general retrofitting plan and
that specific straddle carriers were retrofitted with safety
measures. <u>Id</u>. at 359, 944 P.2d at 1302. However, the court
concluded that the plaintiff's evidence was insufficient to
establish that the manufacturer ever undertook a general
retrofitting program. The court stated that "in the absence of
an otherwise preexisting duty, unless the [manufacturer] *actually
undertook to retrofit* its Series 510 straddle carriers," it would
not be liable. <u>Id</u>. (emphasis added). The court specifically
sought evidence of an actual undertaking of a general
retrofitting program, not a mere promise of such, before it would
impose liability on the manufacturer. <u>Id</u>. at 360, 944 P.2d at
1303.[18]

After weighing the Hawaii Supreme Court and other court
rulings and public policy concerns, the Court concludes that a
designated driver undertakes a common law duty to a third party
under the Section 324A framework. As indicated above, at this

---

[18] Also notable is the decision in <u>Fink</u>, where an injured motorist sued
a contractor for failing to maintain a "STOP" sign in a construction area. 3
Haw. App. at 271, 649 P.2d at 1174. The trial court dismissed the claim,
having concluded that the contractor did not owe a duty to motorists. <u>Id</u>.
However, the Intermediate Court of Appeals concluded that the State owed a
duty to motorists to maintain all road signs, and the contractor undertook to
perform this duty. <u>Id</u>. at 272, 649 P.2d at 1175. The court did not base this
duty on the existence of a mere promise, but relied on evidence that the
contractor actually signed a contract with the State to perform the duty.

time the Hawaii courts have not found the breach of a promise, without the promisor in any way entering performance, to be a sufficient basis for tort liability under Restatement 324A. Accordingly, the Court declines to extend such liability in the absence of any performance.  This conclusion is particularly appropriate in circumstances where parties may have consumed alcohol.  Both the promisor and the promisee, evaluated from a reasonable person's standpoint, should believe that the promisor has undertaken this duty.  When alcohol is involved, promises can be made without adequate consideration of the consequences or resulting responsibilities, and there is too high a risk of ambiguity, misunderstanding, and uncertainty for a mere promise to be sufficient to impose a duty on the promisor.  Moreover, with respect to the element of reliance in subsection (c) of the Restatement, it is in the public interest to require the promisee, such as a commercial alcohol supplier, to ensure that the designated driver has actually begun to undertake his duty.

While the Restatement may not note a sufficient difference between a mere promise and commencement of performance; courts have enumerated sound reasons for requiring some evidence of entering into performance, and Hawaii courts are hesitant to impose new duties.  The Court finds that, especially in circumstances where alcohol is involved, there should be some performance by the promisor to indicate that he is undertaking

32

his duty.  However the extent and degree of such evidence of performance may be slight as evidenced by the Restatement and Dean Prosser.

b.   <u>Genuine Issue of Material Fact</u>

The Court now considers whether Wallach promised to render services (i.e., to drive Sabatino home) and whether he entered into the performance of that promise.  Wallach contends that even if there is a designated driver duty in Hawaii, he did not promise to undertake any such duty.  The burden is on Wallach to persuade the Court that there is an absence of genuine issues of material fact.  The Court will draw all reasonable inferences in favor of the opposing parties.

Wallach has not satisfied his burden that there is no genuine issue of material fact precluding summary judgment. Wallach contends there is no dispute over whether he agreed to be Sabatino's designated driver.  Wallach argues that Captain Dennis "specifically admitted that the issue of providing transportation for Sabatino or whether Dr. Wallach [said] he would be her "designated driver" never came up."  Motion 1, Concise Statement of Facts 4.  However, Cross-Defendants, Maui Dive Shop and 3090, Inc., contend that "though the words "designated driver" were not used, Captain Dennis understood Dr. Wallach's statement: "We will take care of her" to mean that Dr. Wallach would provide Carol Ann Sabatino a ride after she left the vessel."  Opposition to

Motion 1, CSF 4.  Whether Wallach agreed in any manner to be Sabatino's designated driver is a genuine issue for the trier of fact to determine.

In addition, Wallach alleges that both "Dennis and crew member Diane Mulkey of the Alii Nui, stated that Sabatino did not appear to be intoxicated or under the influence of any substance."  Motion 1, CSF 2.  Wallach argues that this fact illustrates that there is no reason to believe that he and Dennis would have discussed a designated driver.  However, Dennis testified that he thought Sabatino was acting bizarrely and that she did need someone to look after her.  Motion 1, Ex. 4 (Dennis Depo.) 13:18-14:5.  There is also evidence that Sabatino's bizarre behavior "sent up a yellow flag" in Dennis' mind.  Reply to Motion 2, CSF 30.  A dispute over the crew's perception of Sabatino and its relevance are issues for a trier of fact, and are not to be determined in a motion for summary judgment.

Wallach also testified that Sabatino congregated with the Wallach party on or near the dock at the conclusion of the cruise.  This gathering took place approximately twenty or thirty feet away from the ship.  Whether Sabatino left in the company of Wallach's party must be determined by a trier of fact.  Based on this determination, there may be enough evidence to signify that Wallach commenced performance of an undertaking as a designated driver.

Finally, Dennis testified that he believed that Sabatino traveled to the boat with Wallach and his party because Wallach told him upon arrival, referring to Sabatino, that they "had brought along an extra today." Opposition to Motion 1, CSF 9. Wallach contends that Dennis' understandings or assumptions are totally irrelevant to the circumstances of the case. However, this factual determination may also bear on whether a reasonable promisee, such as Dennis, would believe that Wallach undertook to perform his promise. Disputes about the specific language, context, and inferences drawn from conversations will bear on whether Wallach assumed a duty to third parties and must be assessed by the trier of fact. Likewise, the Court finds that material issues of fact exist regarding the other elements required to satisfy a negligence claim.

ii. <u>Breach</u>

If the trier of fact finds that Wallach's conduct constituted an undertaking, then it may also find that he breached that duty in permitting Sabatino to drive away on her own. A breach would have occurred if he failed to conform to the standard required by the law. <u>Ono</u>, 62 Haw. at 137, 612 P.2d at 538. This inquiry can not be sufficiently determined at this stage of the proceedings.

iii. <u>Causation</u>

If there is a "reasonable close causal connection

35

between the conduct and the resulting injury," then the third
element of a negligence claim is satisfied.  Id.  Plaintiff
alleges that Wallach's failure to prevent Sabatino from driving
resulted in the accident and death of Bournakel.  A factfinder
may conclude that Wallach had a duty, breached it, and such
breach had a reasonably close causal connection to Bournakel's
death.  "It is well-settled that intervening acts will not
relieve the original wrongdoer of liability if those acts are
reasonably foreseeable."  Ono, 62 Haw. at 140, 612 P.2d at 540
(quoting Collins v. Greenstein, 61 Haw. 27,43, 595 P.2d 275, 284-
85 (Haw. 1979)).  The consequences of allowing an intoxicated
individual to drive are foreseeable and the intervening injurious
conduct is not enough to relieve the designated driver of
liability.  See Ono, 62 Haw. at 140, 612 P.2d at 540-41 (finding
a causal connection between serving alcohol to an inebriated
motorist and the subsequent injury).

iv.  Damage

        The fourth element of a negligence claim is satisfied
when there is "actual loss or damage resulting to the interests
of another...."  Id. at 137, 612 P.2d at 539.  Plaintiff seeks
damages because "Stefan Bournakel suffered serious injuries and
damages, including conscious pain and suffering, caused by
aforesaid collision, from which he died,..., as well as expenses
incurred in the treatment of Bournakel's injuries, loss of

enjoyment of his life's activities, income loss and/or loss of earning capacity, loss of life expectancy, and other damages...." Compl. ¶ 27.  Plaintiff also seeks damages because Sarah White and Nicos Bournakel "suffered and/or will suffer severe and permanent mental distress, loss of support, loss of material and/or parental consortium, love and affection, camaraderie, guidance, instruction, and care" due to the death of Stefan Bournakel.  Compl. ¶ 26.  After assessing the other elements of the negligence claim, a trier of fact must finally determine if the Plaintiffs' alleged injuries resulted from the accident.

Having found the existence of a designated driver duty within the 324A framework, and acknowledging the presence of critical genuine issues of material fact between the parties regarding all four of the elements required to sustain a negligence claim, the Court denies Wallach's Motion for Summary Judgment (Motion 1).

## II.   **3090, Inc.'s Claim that Plaintiff Does Not Have Standing to Contest the Complaint for Exoneration from and/or Limitation of Liability**

Plaintiff has moved for Partial Summary Judgment on 3090, Inc.'s Limitation Complaint.  3090, Inc. ("Limitation Plaintiff" for the purpose of Parts II and III) brought a Limitation Complaint under 46 U.S.C. § 183(a) ("Limitation of Liability Act" or "Act"), which states in pertinent part:

> [t]he liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or

destruction by any person of any property, goods, or
merchandise shipped or put on board of such vessel, or
for any loss, damage, or injury by collision, or for
any act, matter, or thing, loss, damage, or forfeiture,
done, occasioned, or incurred, without the privity or
knowledge of such owner or owners, shall not, except in
the cases provided for in subsection (b) of this
section, exceed the amount or value of the interest of
such owner in such vessel, and her freight then
pending.

The Act was passed in 1851 "to encourage ship-building and to
induce capitalists to invest money in this branch of industry"
and to put "American shipping upon an equality with that of other
maritime nations." Lewis v. Lewis & Clark Maritime, Inc., 531
U.S. 438, 446-47 (2001)(internal quotations and citations
omitted).

Before facing the merits of Plaintiff's motion, the
Court must address Limitation Plaintiff's challenge to whether
Plaintiff has standing to bring this Motion to Oppose the
Complaint for Exoneration from and/or Limitation of Liability
("Motion 2").

3090, Inc. argues in its Opposition to Motion 2 that
Plaintiff failed to file an F(5) claim and thus lacks standing
for Motion 2.  The Court disagrees.  Rule F(5) of the
Supplemental Rules for Certain Admiralty and Maritime Claims
requires all potential claimants in a Limitation proceeding to
file a claim and answer by the date specified by court order.
The purpose of this rule is to consolidate all pending and
potential claims against the owner of the vessel in one

38

Limitation proceeding.  This allows all claimants and potential claimants to challenge the limitation and share in any awarded damages, which might be limited to the value of the subject vessel.

The October 3, 2005 Order directed "all persons asserting claims with respect to the Complaint seeking Limitation..." to file their claims on or before December 12, 2005.  October 3, 2005 Order at 3.  The Order explicitly acknowledged the existence of the Plaintiff's complaint.  <u>See</u> October 3, 2005 Order at 4,5.  On November 9, 2004, Plaintiff filed a Second Amended Complaint, including 3090, Inc. as a defendant, in civil case No. 04-0500 (ACK/LEK).  On March 7, 2005, Plaintiff filed an Answer to the Limitation Plaintiff's Complaint.  On April 15, 2005, Plaintiff's case was consolidated with the Limitation proceeding, civil case No. 05-0025 (ACK/LEK). The Court concludes that the Plaintiff's Complaint, Answer, and consolidation of the two cases are sufficient to satisfy the aim of Rule F(5) and requirements of the Court's October 3, 2005 Order, which itself acknowledged Plaintiff's claim.

In any event, it is within a court's discretion to grant the filing of a claim after the deadline "so long as (1) the limitation proceeding is pending and undetermined and (2) the rights of the parties will not be adversely affected." <u>American Commercial Lines, Inc. v. United States</u>, 746 F.2d 1351, 1353 (8th

Cir. 1984).  Plaintiff's Motion 2 will cause no additional delay to the proceedings nor adversely affect the rights of other parties.  The Court is even less persuaded by the challenge to standing considering the previous lengthy delays endured by the Court resulting from Limitation Plaintiff's delayed actions in this matter, including the Court having to issue an order to show cause why the complaint should not be dismissed due to the Limitation Plaintiff's delays in proceeding with publication of notice to the claimants.  In sum, under the circumstances, the Court construes Plaintiff's Answer as a claim for purposes of Rule F(5).

### III. **Plaintiff's Motion for Partial Summary Judgment** ("Motion 2")

As stated above, a shipowner may file a complaint under 46 U.S.C. § 183(a) to limit the value of its liability to the value of the vessel.  The shipowner is protected by the Act "unless the condition of unseaworthiness or the act of negligence was within the shipowner's privity or knowledge."  In re Bowfin M/V v. International Specialty, Inc., 339 F.3d 1137 (9th Cir. 2003)(internal quotations omitted).  To proceed without limitation, a claimant must first establish that the act of negligence or condition of unseaworthiness caused the injury. Id.  Then, the burden shifts to the shipowner to prove the "act or condition was outside its privity or knowledge."  Id.

40

A.   Negligence

          Plaintiff argues that the shipowner is responsible,
either directly or through its crew, for three acts of negligence
sufficient to satisfy its burden under the Act.  Plaintiff
alleges that (1) the Alii Nui's practice of serving an unlimited
amount of liquor for a fixed price during a set period of time
and selling tickets for an "all you can drink" cruise violated
Chapter 101 of the Rules Governing the Manufacture and Sale of
Intoxicating Liquor of the County of Maui § 08-101-69(a); (2) the
crew of the Alii Nui served intoxicated passengers in violation
of Hawaii's Intoxicating Liquor Statute § 281-78(b)(1)(B); and
(3) the Limitation Plaintiff failed to train and manage a
competent crew.

          As discussed in Part I, a successful negligence claim
under Hawaii law must satisfy the following four elements:

          1.   A duty, or obligation, recognized by the law,
          requiring the actor to conform to a certain standard of
          conduct, for the protection of others against
          unreasonable risks.
          2.   A failure on [the actor's] part to conform to the
          standard required....
          3.   A reasonable close causal connection between the
          conduct and the resulting injury....
          4.   Actual loss or damage resulting to the interests of
          another....

Ono, 62 Haw. at 137, 612 P.2d at 538-39.  The Court will address
the Plaintiff's allegations of the three acts of negligence under

41

this standard.

i.   Maui County Liquor Rule § 08-101-69(a)

Plaintiff first alleges that 3090, Inc. was negligent because its practices violated a Maui County Liquor ordinance that states:

> a. No licensee of any premises licensed to sell liquor for consumption on the premises shall:
>
> 1.[s]ell, advertise, or offer to sell "all the liquor you can drink" for a fixed price...;
>
> 2. [s]erve an unlimited amount of liquor during a set period of time for a fixed price, provided this provision does not apply to class 2 and class 12 licensees, when such function is not open to the general public, and for which a hosted bar is utilized such as weddings, private parties, and fundraising functions, or where liquor may be inclusive with champagne brunch or luaus....

Maui County Liquor Rule § 08-101-69(a)(1-2).  "Duty in a negligence action may be defined by common law or statute."  Lee v. Corregedore, 83 Haw. 154, 172, 925 P.2d 324, 342 (Haw. 1996). Restatement § 285 states in pertinent part: "the standard of conduct of a reasonable man may be ... (b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide...."  Restatement (Second) of Torts § 285 (1965).  The Hawaii Supreme Court agreed that "[i]f a statute 'contains no express provision that its violation shall result in tort liability, and no implication to that effect, the court may, and in certain types of cases customarily will, adopt the

42

requirements of the enactment as the standard of conduct
necessary to avoid liability for negligence.'" <u>Corregedore</u>,83
Haw. at 173, 925 P.2d 343 (<u>citing</u> Restatement (Second) of Torts §
285 comment c (1965)).  This is also true for municipal
ordinances.  <u>Id</u>.  The Hawaii Supreme Court explained further that
"courts may adopt the requirements of a statute as the standard
of care when the purpose of the statute is 'to protect a class of
persons which includes the one whose interest is invaded[.]'"
<u>Corregedore</u>, 83 Haw. at 173, 925 P.2d 343 (<u>citing</u> Restatement
(Second) of Torts § 286(a)(1965).

Maui County Liquor Rule § 08-101-4 states in pertinent
part: "[t]he rules of the commission shall be construed to secure
a reasonable balance between the protection of the public health,
safety, and welfare, and the prudent exercise of liquor
licensees' privilege to sell and manufacture liquor in the County
of Maui...."  The Court concludes that Maui County Liquor Rule §
08-101-69(a) is designed for the protection of the safety and
welfare of the general public from potential harm, such as
automobile accidents, that a patron of an "all you can drink"
event may cause.  As a result, liquor licensees have a duty to
comply with the ordinance or be liable for negligence to
individuals injured in such accidents.  The Court next addresses
whether 3090, Inc. breached this duty.

3090, Inc. does not refute that it sells an "all the

43

liquor you can drink" for a fixed price cruise package, in violation of Maui County Liquor Rule § 08-101-69(a)(1).  Motion 2, Ex. A (Bob Chambers Depo.) at 55:15-18; 56:12-14; and 85:8-11. 3090, Inc. concedes that an unlimited amount of alcohol was included within the fixed ticket price for the period of the duration of the cruise.  Opposition to Motion 2, at 9.[19] However, 3090, Inc. contends that it is not in violation of the ordinance because (1) an inspector from the Maui County Liquor Commission informed Jeff Strahn that "the practice of including liquor within the price of a ticket aboard the vessel" did not violate the Maui County Liquor Rules; (2) the Maui County Liquor Commission has only cited 3090, Inc. for serving an intoxicated individual on February, 13, 2004; and (3) the language of Maui County Liquor Rule § 08-101-69(a)(2) is ambiguous and may contain a "champagne brunch exception" that allows licensees to serve an unlimited amount of alcohol at a champagne brunch or luau.

     First, Jeff Strahn, an officer of 3090, Inc. and Vice President of Maui Dive Shop, alleges that an inspector from the Maui County Liquor Commission informed him that "the practice of including liquor within the price of a ticket aboard the vessel"

---

[19] Alcohol is only limited by a crewmember's decision to stop serving. (Motion 2, CSF 7, Opposition to Motion 2, CSF 7).  Plaintiff alleges that it was also advertised that the Alii Nui cruise had an "open bar" in violation of the Maui County Liquor Rule § 08-101-69(a)(1).  (Motion 2, CSF 7).  3090, Inc. refutes that the cruise was advertised as "open bar" or "all you can drink." (Opposition to Motion 2, CSF 7).

did not violate the Maui County Liquor Rules.  Strahn Decl. ¶ 3.
Strahn's statement does not provide evidence of permission to
sell or serve an "all you can drink" package that 3090, Inc.
could have reasonably relied upon.  The inspector's comment could
be interpreted as authorizing a practice of including the cost of
one or two drinks in the cost of a ticket, which is very
different from selling an "all you can drink" cruise package.  In
any event, 3090, Inc.'s reliance on the inspector's statement
does not relieve it from any potential liability for violating
the scope of the ordinance.

Second, Limitation Plaintiff states that the Maui
County Liquor Commission did not cite it for violating Maui
County Liquor Rule § 08-101-69(a) on February 13, 2004.  In fact,
the Commission has never cited the Alii Nui operation for a
violation of that ordinance.  Alii Nui has been operating similar
cruises since 1996.  The Maui County Liquor Commission hearing
regarding this matter is not scheduled until March 31, 2006.
However, a ruling by the Commission will be subsequent to the
February 13, 2004 conduct in question, so the Limitation
Plaintiff could not have relied on the decision to its detriment.
A Commission decision not to cite Limitation Plaintiff is even
less instructive as to whether 3090, Inc. was negligent
considering the lack of any evidence of enforcement over such a
lengthy period of time.  Moreover, when Limitation Plaintiff,

45

through its counsel, made these arguments at the January 23, 2006 hearing on this motion, the Court reminded Limitation Plaintiff's counsel that ignorance of the law was no excuse.  At that time, counsel conceded that "lack of enforcement" was not a valid excuse either.  Ultimately, even if the Commission does not cite the Limitation Plaintiff for violating the ordinance, such inaction would not trump the language of the ordinance itself and relieve Limitation Plaintiff of its duty.

Finally, Limitation Plaintiff contends that the ordinance contains a "champagne brunch exception" that permits licensees of all classes to serve an unlimited amount of alcohol for a fixed price with a champagne brunch or luau.  Even if the Court agrees that Limitation Plaintiff's offering could be classified as a champagne brunch or luau, the Court finds that the exception only applies to class 2 and 12 licensees. Limitation Plaintiff is not covered by the "champagne brunch exception" because it holds a class 9 liquor license for a tour or cruise vessel.  Interpreting Maui County Rule § 08-101-69(a)(2) to indicate that there is a "champagne brunch exception" for licensees other than class 2 or 12 licensees is not consistent with the plain reading of the ordinance.  To read the ordinance so that the "champagne brunch exception" is independent of the class 2 and 12 modification negates the exception

46

entirely.[20]

The Court finds 3090, Inc.'s service of an unlimited amount of alcohol for a fixed price in a set period of time and sale of tickets for an "all you can drink" cruise, violated the Maui County Liquor ordinance.  In doing so, Limitation Plaintiff breached its duty as set out by the ordinance.  The Court will now consider whether there is sufficient evidence of causation and damage to sustain the Plaintiff's allegation of negligence.

At the January 23, 2006 hearing before this Court, Limitation Plaintiff conceded through counsel that (1) if the Court concludes that a decision of the Liquor Commission whether or not to cite 3090, Inc. for violations of the ordinance does not trump the ordinance itself, and (2) if the Court concludes that 3090, Inc. violated the language of the ordinance, then 3090, Inc. was negligent.  While research has failed to unearth any case interpreting the quoted provisions of the Maui County Liquor Rules, the Court is mindful that "[a]n actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons

---

[20]   The Limitation Plaintiff's interpretation would actually read as follows: "[n]o licensee of any premises licensed to sell liquor for consumption on the premises shall: [s]erve an unlimited amount of liquor during a set period of time for a fixed price,..., [or] where liquor may be inclusive with champagne brunch or luaus...."  Maui County Rule § 08-101-69(a)(2).

the statute is designed to protect." Restatement (Third) Torts §
14 (Proposed Final Draft 2005).[21] As articulated previously
under Restatement (Second) of Torts § 286, the Court finds that
the automobile accident caused by Sabatino, a patron of an
"unlimited alcohol" event, is precisely the type of harm that the
ordinance was intended to prevent, and the accident victim,
Bournakel, is precisely the victim that the ordinance intended to
protect.

    The Court finds that Limitation Plaintiff was negligent
because it (1) had a duty as a licensee under the Maui County
Liquor ordinance; (2) it breached that duty when it violated
prohibitions 1 and 2 of Maui County Liquor Rule § 08-101-69(a);
(3) there was a reasonably close causal connection between its
conduct and the resulting injury, an automobile accident between
Sabatino, a patron of its cruise, and Bournakel; and (4)
Bournakel, the type of victim the ordinance was designed to
protect, was injured, causing damage to Plaintiff. The Court
will briefly consider the Plaintiff's contention of two
additional grounds for negligence before addressing whether 3090,
Inc. had privity or knowledge of the negligent conduct.

---

[21] "This Section draws on Restatement (Second) Torts § 285."
Restatement (Third) Torts § 14 comment a (Proposed Final Draft 2005). The
Hawaii Supreme Court followed the reasoning of Restatement (Second) Torts §
285 in Corregedore, 85 Haw. at 172, 925 P.2d at 342.

ii. <u>Hawaii Revised Statute § 281-78(b)(1)(B)</u>

It is clear under <u>Ono</u>, that a commercial supplier of alcohol is liable for negligence when it serves alcohol to an intoxicated patron who subsequently injures another person in an automobile accident. 62 Haw. at 141, 612 P.2d at 541.  The court created this duty when it held that such conduct violated Hawaii Statute §281-78(a)(2)(B)(1976) that prohibited serving "any person at the time under the influence of liquor."[22]  What is not clear in this case, is whether the crew of the Alii Nui ever had notice that Sabatino was under the influence of alcohol.  Without this notice, there can be no negligence claim under this theory.  If there is a dispute over the material facts underlying this claim then the Court may not grant summary judgment on this theory.  The Court finds numerous genuine issues of material fact that bear on whether the crew of the Alii Nui served Sabatino when they knew she was already intoxicated.[23]  Only the trier of

---

[22]  The same prohibition can now be found under Hawaii Revised Statute § 281-78(b)(1)(B)(2003).

[23]  Plaintiff contends that at least three people, Sabatino, Taina Kelly, and David Kelly, were overserved on the cruise and the crew continued serving them.  Limitation Plaintiff contends that Dennis and Mulkey noticed signs that Taina Kelly was intoxicated and they stopped service of alcohol to her at that time.  Limitation Plaintiff also claims that not one person on the boat noticed any signs of Sabatino's intoxication while she was aboard the Alii Nui.  Captain Dennis testified that he observed unusual behavior in Sabatino.  Plaintiff contends that Sabatino was intoxicated on the ship and had a Blood Alcohol Content of .209 when she left the ship.  Each party agrees that Sabatino had more than the three glasses of champagne that she recalls.  The Plaintiff's expert, Dr. Clifford Wong, concludes that Sabatino must have had significantly more than three drinks on the ship.  The Limitation Plaintiff's expert, Dr. Binh Ly, concludes Sabatino must have had more to drink after leaving the vessel.  Plaintiff contends that Sabatino testified that she did not drink after leaving the ship and that there was no evidence of alcohol

fact may determine whether the members of the crew had notice or knowledge that Sabatino was intoxicated when they continued to serve her.  The Court declines to find negligence at this summary judgment stage of the proceedings on the Plaintiff's second grounds.

iii.  <u>Training and Management of a Competent Crew</u>

        The third basis for negligence is the Plaintiff's allegation that 3090, Inc., Maui Dive Shop, and Captain Dennis failed to properly train and manage the crew.  Plaintiff relies upon cases where courts have found a shipowner to be negligent for failing to provide an adequate and competent crew.  <u>Admiral Towing Co. v. Woolen</u>, 290 F.2d 641, 646 (9th Cir. 1961)(finding negligence where an inadequately manned vessel was lost at sea); <u>Hercules Carriers, Inc. v. State of Florida</u>, 768 F.2d 1558, 1565-66 (11th Cir. 1985).  In <u>Hercules</u>, the Eleventh Circuit affirmed that the shipowners were negligent for failing to train the crew in nautical operations, along with numerous other indications of incompetence, but only after reviewing the facts that were established at trial.  768 F.2d at 1566-75.  When there are

_____

containers found at the scene.
        Each party relies on their experts' reports analyzing Sabatino's Blood Alcohol Content to determine whether she was intoxicated at the time she was on the vessel, whether she would have appeared intoxicated, and whether she drank any additional alcohol after she left the boat.  However, the number of drinks a person consumes is not clear evidence that they are under the influence of alcohol.  As Dr. Binh Ly, M.D., reported, "the range of behavior at a particular BAC may vary considerably from individual to individual." Declaration of Binh Ly, ¶ 8.  The parties are simply drawing conclusions, unable to base their theories of liability solely on undisputed facts.

discrepancies about whether a shipowner was negligent in the management and training of the crew, that determination must be made by the trier of fact.   There is a genuine dispute over the facts regarding training procedures for the Alii Nui crew.[24]   In addition, even if the Court could make a determination about the adequacy of the training procedures, there would still be a factual dispute as to whether a properly trained crew would have noticed that Sabatino was intoxicated under these circumstances. As a result, the Court refrains from finding negligence on this ground at the summary judgment stage of the proceeding.

B.   <u>Privity and Knowledge</u>

If the claimant can establish that an act of negligence occurred, then the burden shifts to the shipowner to prove the "act or condition was outside its privity or knowledge." <u>In re Bowfin</u>, 339 F.3d at 1137.   The Court concludes that practices and conduct on the Alii Nui on February 13, 2004 constituted negligence in violation of the Maui County Liquor ordinance and so the burden shifts to 3090, Inc. to prove that this negligent conduct was outside of its knowledge or privity.   The Limitation

---

[24]  Plaintiff claims that the crew was not properly trained in beverage service.  Limitation Plaintiff claims that Diane Mulkey received beverage training, although there were no written training materials.  Plaintiff contends that this training only consisted of watching other servers. Limitation Plaintiff contends that Mulkey, a former police officer, had been previously trained to identify the signs of intoxication.  Limitation Plaintiff also contends that Captain Dennis had discussions with the crew on being aware of signs of intoxication.  Limitation Plaintiff alleges that Dennis attended a mandatory training course given by the Maui County Liquor Commission, although the citations to this fact in Opposition to Motion 2, CSF 18 do not refer to any supporting evidence for this allegation.

Plaintiff has made no effort to meet its burden and show that the act of negligence was outside of its knowledge or privity.[25]

Strahn is the Secretary and Treasurer for 3090, Inc.. Bob Chambers, 3090, Inc.'s President, delegated authority to Strahn to run the operations of the Alii Nui. Strahn knew that an "all you can drink" cruise package was sold, offered and served on the Alii Nui. Strahn testified that he traveled on a cruise on the Alii Nui before Maui Dive Shop purchased 3090, Inc. where he observed the conduct and practices of the Alii Nui crew. These practices and conduct were not changed once Maui Dive Shop purchased 3090, Inc. and the Alii Nui. This conduct includ... the service of unlimited alcohol per passenger request.

Dennis is a manager of 3090, Inc. and the captain of the Alii Nui. Strahn delegated management authority to Dennis for the day-to-day operations of the Alii Nui. Dennis knew that an "all you can drink" cruise package was sold, offered, and served on the Alii Nui. Dennis captained the Alii Nui on February 13, 2004 and served alcohol to the passengers, including Sabatino. Without a response to consider from the Limitation Plaintiff, the foregoing facts are sufficient to support a finding that 3090, Inc. had privity and knowledge of the negligent conduct.

---

[25] "[W]here no evidence of negligence exists, the inquiry is at an end and the privity and knowledge element is of no importance." Quoting Limitation Plaintiff in its Opposition to Motion 2 at 8.

In finding that the crew and ownership of the Alii Nui negligently violated the Maui County Liquor ordinance, and without any evidence that the conduct was outside of Limitation Plaintiff's knowledge or privity, the Court grants Plaintiff's Motion for Partial Summary Judgment regarding the Exoneration from and/or Limitation of Liability (Motion 2).  Accordingly, Defendant 3090, Inc.'s liability is not limited to the value of the subject vessel, the Alii Nui.

### CONCLUSION

For the foregoing reasons, the Court: 1)DENIES Defendant Wallach's Motion for Summary Judgment (Motion 1); (2) DENIES Limitation Plaintiff 3090, Inc.'s Claim that Plaintiff White Lacks Standing to File a Motion for Partial Summary Judgment; and (3) GRANTS Plaintiff White's Motion for Partial Summary Judgment (Motion 2).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 9, 2006.



_____
Alan C. Kay
Sr. United States District Judge

White v. Sabatino, CV No. 04-0500 (ACK/KSC); CV No. 05-0025 (ACK/LEK). ORDER DENYING DEFENDANT WALLACH'S MOTION FOR SUMMARY JUDGMENT; DENYING LIMITATION PLAINTIFF 3090, INC.'S CLAIM THAT PLAINTIFF WHITE LACKS STANDING TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT; AND GRANTING PLAINTIFF WHITE'S MOTION FOR PARTIAL SUMMARY JUDGMENT.