IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SARAH C. WHITE, Individually and as Special Administrator of THE ESTATE OF STEFAN BOURNAKEL, Deceased, and as Next Friend of NICOS ROBERT BOURNAKEL, a minor, | ) ) ) ) ) ) | Civ. No. 04-00500 ACK/LEK Civ. No. 05-00025 ACK/LEK |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CAROL ANN SABATINO, BOB'S MAUI DIVE SHOP, INC. dba MAUI DIVE SHOP, a Hawaii Corporation; 3090 INCORPORATED, a Hawaii Corporation; RONALD E. WALLACH; JOHN DOES 1-20; JANE DOES 1-20; DOE CORPORATIONS 1-20; DOE PARTNERSHIPS 1-20; DOE ASSOCIATES 1-20; DOE GOVERNMENTAL AGENCIES 1-20; and OTHER ENTITIES 1-20, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| IN PERSONAM | ) ) | |
| and M/V ALII NUI O.N. 567359 | ) ) | |
| IN REM | ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| RONALD E. WALLACH, | ) ) | |
| Cross-Claimant, | ) ) ) | |
| v. | ) ) | |
| CAROL ANN SABATINO, BOB'S MAUI DIVE SHOP, INC. dba MAUI DIVE SHOP, a Hawaii Corporation; | ) ) ) | |

| | |
|---|---|
| and 3090 INCORPORATED, a | ) Civ. No. 04-00500 ACK/LEK |
| Hawaii Corporation, | ) Civ. No. 05-00025 ACK/LEK |
| | ) |
| Cross-Defendants. | ) |
| _____ | ) |
| | ) |
| IN THE MATTER OF THE COMPLAINT | ) |
| OF 3090, INCORPORATED, a | ) |
| Hawaii Corporation as owners | ) |
| of the M/V ALII NUI O.N. | ) |
| 567359, FOR EXONERATION FROM | ) |
| AND/OR LIMITATION OF | ) |
| LIABILITY. | ) |
| _____ | ) |

## ORDER GRANTING DEFENDANT RONALD E. WALLACH'S SECOND MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

This case arises out of the tragic automobile accident that occurred on February 13, 2004 between motorists Carol Ann Sabatino ("Sabatino") and Stefan Bournakel ("Bournakel"). Bournakel suffered traumatic injuries and died as a result of the accident.  Sabatino was intoxicated at the time of the accident. Prior to the accident, Sabatino was a passenger on a cruise vessel named the Alii Nui.  Defendant 3090, Incorporated ("3090, Inc.") owns and operates in rem Defendant M/V Alii Nui. Defendant Bob's Maui Dive Shop, Incorporated ("Maui Dive Shop") owns 3090, Inc..  Defendant Ronald E. Wallach ("Wallach"), Sabatino's employer at the time, along with his wife, sister-in-law, and brother-in-law, were also passengers on the Alii Nui that morning.

2

Plaintiffs Sarah White, Individually and as Special Administrator of the Estate of Bournakel, Deceased and Nicos Robert, a minor and next friend of White (hereafter "Plaintiffs"), have sued Defendants Sabatino, 3090, Inc., Maui Dive Shop, Wallach, and M/V Alii Nui.  In an action that was consolidated with Plaintiffs' Complaint, 3090, Inc. filed a complaint seeking exoneration from and/or limitation of liability.

On February 16, 2005, the parties stipulated to a partial dismissal with prejudice of all claims against Sabatino.

On June 16, 2005, Cross-Claimant Wallach filed cross-claims against Cross-Defendants Sabatino, 3090, Inc., and Maui Dive Shop.

Two previous motions for summary judgment were filed in this case.  On October 25, 2005, Wallach filed his first motion requesting summary judgment on all of Plaintiffs' claims against him.  On December 14, 2005, Plaintiffs filed a Motion for Partial Summary Judgment regarding 3090, Inc.'s limitation complaint.

On February 9, 2006, the Court issued an Order denying Defendant Wallach's First Motion for Summary Judgment and granting Plaintiffs' Motion for Partial Summary Judgment ("Feb. 9 Order").[1]  Pertinent to the motion currently before the Court,

---

[1]  The Court incorporates the factual and procedural history from its February 9, 2006 Order by reference.  The facts that

**(Cont.)**

the Court held that a common law designated driver duty exists in Hawaii and that genuine issues of material fact remained as to whether Wallach made a promise and performed an undertaking of the duty to act as a designated driver for Sabatino.

On March 7, 2006, Wallach filed a Motion To Deem His First Request For Admissions To Defendant Bob's Maui Dive Shop, Inc. And Defendant 3090, Incorporated Admitted ("Admissions Motion").  On March 24, 2006, 3090, Inc. filed a declaration of its counsel, Richard Lesser, in opposition to the Admissions Motion.  On March 31, 2006, Wallach filed a Reply to the Opposition to the Admissions Motion along with three exhibits. Subsequently, 3090, Inc. withdrew its Opposition to the Admissions Motion.  On April 11, 2006, Magistrate Judge Kobayashi granted the unopposed Admissions Motion.  A written Order to this effect was issued on April 25, 2006.

The six judicial admissions now deemed admitted are:

> 1) No understanding was reached between Dr. Ronald Wallach and any member of the crew of the Alii Nui to the effect that Dr. Wallach was a designated driver for Carol Ann Sabatino.
>
> 2) Dr. Wallach never said that he was the designated driver for Carol Ann Sabatino.
>
> 3) No member of the crew of the Alii Nui ever heard Dr. Wallach state that he was the designated

---

appear in this Order and those admitted from the Feb. 9 Order are recited for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

driver for Carol Ann Sabatino.

4) Carol Ann Sabatino did not appear intoxicated while on board the Alii Nui on February 13, 2004.

5) Members of the crew of the Alii Nui assumed that Dr. Wallach was Carol Ann Sabatino's driver.

6) No member of the Alii Nui's crew on February 13, 2004 asked Dr. Wallach if he was Carol Ann Sabatino's driver.

(Admissions Motion, Ex. 1 at 5-6).

On May 11, 2006, in light of these judicial admissions, Wallach filed a second Motion For Summary Judgment As To All Claims Against Defendant Ronald E. Wallach ("Second Motion").  In addition, Wallach filed a Concise Statement of Facts To His Motion For Summary Judgment ("Second Motion CSF").

On June 27, 2006, as they had in response to Wallach's first motion, Plaintiffs filed a Statement Of No Position On Defendant Ronald E. Wallach's Motion For Summary Judgment.

On July 6, 2006, Defendant 3090, Inc. filed a Memorandum Of Points & Authorities In Opposition To Defendant Ronald E. Wallach's Motion For Summary Judgment ("Opposition"). 3090, Inc. also filed a Separate And Concise Statement Of Facts In Opposition To Defendant Ronald E. Wallach's Motion For Summary Judgment ("Opposition CSF") and a Declaration of Steven McGuire. In addition, Defendant Maui Dive Shop, Inc. filed a Joinder to 3090, Inc.'s Opposition.

On July 13, 2006, Wallach filed a Reply To Defendant

3090, Incorporated's Memorandum Of Points & Authorities ("Reply").

The parties appeared before this Court on July 24, 2006 to address Wallach's second Motion for Summary Judgment.

**STANDARD**

**Motion for Summary Judgment**

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[2] Fed. R. Civ. P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[2] Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence that a court may consider when determining whether a material issue of fact exists. Fed. R. Civ. P. 56(e). Legal memoranda and oral argument are not evidence and do not create issues of fact. See British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

party.'"[3]  <u>Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav.</u>

<u>Ass'n</u>, 310 F.3d 1188, 1194 (9th Cir. 2002) (quoting <u>Union Sch.</u>

<u>Dist. v. Smith</u>, 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal

citations omitted).  Conversely, where the evidence "could not

lead a rational trier of fact to find for the nonmoving party,

there is no 'genuine issue for trial.'"  <u>Matsushita Elec. Indus.</u>

<u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting

<u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

       The moving party has the burden of persuading the court

as to the absence of a genuine issue of material fact.  <u>Celotex</u>,

477 U.S. at 323.  The moving party may do so with affirmative

evidence or by "'showing'--that is pointing out to the district

court-that there is an absence of evidence to support the

nonmoving party's case."  <u>Id.</u> at 325.  All evidence and

reasonable inferences drawn therefrom are considered in the light

most favorable to the nonmoving party.  <u>See, e.g.</u>, <u>T.W. Elec.</u>

<u>Serv. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th

Cir. 1987).  So, too, the court's role is not to make credibility

assessments.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249

(1986).  Accordingly, if "reasonable minds could differ as to the

import of the evidence," summary judgment will be denied.  <u>Id.</u> at

250-51.

_____

       [3] Disputes as to immaterial issues of fact do "not preclude
summary judgment."  <u>Lynn v. Sheet Metal Workers' Int'l Ass'n</u>, 804
F.2d 1472, 1478 (9th Cir. 1986).

Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. See Celotex, 477 U.S. 322-23; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., 809 F.2d at 630. The nonmoving party must instead set forth "significant probative evidence" in support. T.W. Elec. Serv., 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.[4] See Celotex, 477 U.S. at 322.

---

[4] When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgment." UA Local 343 of the United Ass'n of Journeymen v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995). Upon showing a prima facie case, the burden of production shifts and it becomes "incumbent on [the nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under that rule." Id. (quoting Fed. R. Civ. P. 56(e)); Charles Alan Wright et al., Federal Practice & Procedure § 2727 (3d ed. 1998). The ultimate burden of persuasion as to the non-existence of any genuine issues of material fact remains on the moving party. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000); accord Dye v. United States, 121 F.3d 1399, 1409 (10th Cir. 1997).

## **DISCUSSION**

Plaintiffs allege Wallach was negligent in failing to act as Sabatino's designated driver.  Third Amended Complaint ¶ 20.  In order for Plaintiffs' negligence claim against Wallach to be successful it must satisfy the following four elements:

> 1)  A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
>
> 2)  A failure on [the actor's] part to conform to the standard required....
>
> 3)  A reasonable close causal connection between the conduct and the resulting injury....
>
> 4)  Actual loss or damage resulting to the interests of another....

Ono v. Applegate, 62 Haw. 131, 137, 612 P.2d 533, 538-39 (Haw. 1980).  The Court previously held that genuine issues of material fact exist regarding these elements and denied Wallach's first motion for summary judgment.  See Feb. 9 Order at 22-37.

After the Court's February 9, 2006 ruling, Wallach moved to have six judicial admissions deemed admitted by the Court.  In the absence of any opposition from the other parties, the admissions were deemed admitted.  Wallach now argues that those six judicial admissions significantly alter the factual landscape of this case from the time of his first motion to the present, and thus the Court should now grant summary judgment for Wallach on all claims against him.  In light of the judicial

9

admissions, the Court now reevaluates two of those elements, duty and causation.

## I.   Designated Driver Duty

The Court previously held that a person who undertakes the duty of performing as a designated driver may be liable for negligence.  <u>See</u> Feb. 9 Order at 21-33 (Discussion Part I.B.i.). After examining the sparse existing case law, the Court relied on the framework outlined in the Restatement (Second) of Torts § 324A[5] as the basis for the duty.  The Court provided the following paraphrase of Section 324A to express the designated driver duty:

> When one promises to undertake the designated driver responsibilities for an intoxicated person, he should recognize that this undertaking is for the protection of third parties, such as other drivers.  He would be liable for injuries to this third party if his failure to exercise reasonable care in performing the

---

[5]   Restatement (2nd) of Torts § 324A states:

[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person on the undertaking.

> designated driver duty a) increased the risk of the harm; or b) he undertook a duty that was otherwise owed by someone else, such as the commercial alcohol supplier; or c) the harm was suffered because parties such as the alcohol supplier or the victim driver relied on his undertaking.

Feb. 9 Order at 28-29.  Accordingly, the Court concluded that a designated driver undertakes a common law duty to a third party under the Section 324A framework.  Id. at 31.

When it first recognized the designated driver duty, the Court noted that Hawaii courts "are reluctant to impose a new duty upon members of our society without any logical, sound, and compelling reasons taking into consideration the social and human relationships of our society."  Johnston v. KFC Nat'l Management Co., 71 Haw. 229, 232-33, 788 P.2d 159, 161 (Haw. 1990); see also Birmingham v. Fodor's Travel Publications, Inc., 73 Haw. 359, 370-71, 833 P.2d 70, 76 (Haw. 1992).  As such, the Court emphasizes that this duty applies only in limited instances where the actor undertakes to "render services to another which he should recognize as necessary for the protection of a third person" because the potential driver is intoxicated.[6]  See

---

[6]  For example, the second prong of Section 324A assigns liability when an actor undertakes the duty owed by another.  In Hawaii, a commercial alcohol supplier is liable when it serves alcohol to an intoxicated patron who subsequently injures another person.  Ono, 62 Haw. at 141, 612 P.2d at 541.  The duty was derived from the prohibition on serving "any person at the time under the influence of liquor."  See H.R.S. § 281-78(b)(1)(B) (2003).  For a designated driver to undertake the commercial alcohol supplier's duty he would have to render services to the intoxicated person that the commercial alcohol supplier served.

11

Restatement (2nd) of Torts § 324A.

        The Court also held that a mere promise, without
entering into any type of performance, would be an insufficient
undertaking to create potential liability for a designated
driver.  The Court found this to be particularly relevant in
cases such as these where the consumption of alcohol was at
issue.  While requiring some evidence of performance, the Court
noted that the extent and degree of such evidence of the
performance may be slight.  <u>Id.</u> at 33.

        Having reached the conclusion that a designated driver
duty exists, the Court evaluated the particular facts of this
case to determine whether Wallach undertook such a duty and if
so, did he fail to uphold the duty.  Based on the record
available at the time of Wallach's first motion, the Court found
genuine issues of material fact existed regarding whether Wallach
made a promise to act as Sabatino's designated driver and whether
he performed an undertaking.  Wallach now asserts that these
issues of material fact are settled and that they support his
request for summary judgment.

        Defendant and Cross-Defendant 3090, Inc. has never
asserted in this case that Wallach used the words "designated
driver" with any member of the crew of the Alii Nui.  The alleged
promise arises solely from the testimony of the captain of the
Alii Nui, Chris Dennis, who claims that he had a conversation

12

with Wallach regarding Sabatino.  According to Dennis, he was
concerned with Sabatino's behavior while aboard the Alii Nui and
asked Wallach "Is she okay?"  <u>See</u> Wallach's First Motion for
Summary Judgment, Ex. 4 (Deposition of Chris Dennis) at 12:15-21.
In response, Dennis claims that Wallach assured him by saying,
"Yes. Don't worry, we'll take care of her."  <u>Id.</u>

Dennis explained that he assumed Wallach's
response meant "that she was being driven by him or a member of
his party."  <u>Id.</u> at 44:9-10.  Dennis later testified that he
"assumed" or "inferred" that Wallach would be Sabatino's
designated driver.  <u>Id.</u> at 49:5-18.  Dennis further explained
that when he asked Wallach if Sabatino was okay he was really
inquiring whether Wallach would act as her designated driver,
only with different words.  <u>Id.</u> 44:15-24.

Wallach now presents two critical judicial admissions
that transform the factual background of the case.  Judicial
Admissions 1 and 5 state:

> 1) No understanding was reached between Dr. Ronald
> Wallach and any member of the crew of the Alii Nui
> to the effect that Dr. Wallach was a designated
> driver for Carol Ann Sabatino.
>
> 5) Members of the crew of the Alii Nui assumed
> that Dr. Wallach was Carol Ann Sabatino's driver.

Judicial Admission 1 confirms Wallach's contention from the
outset of this case that he never promised to undertake the duty
of acting as a designated driver for Sabatino.  If he and Dennis

13

never reached an "understanding" to the effect that he would act as Sabatino's designated driver, then 3090, Inc. can no longer argue that he made such a promise.  Judicial Admission 5 further clarifies that Dennis may have assumed Wallach would act as Sabatino's designated driver, but they did not reach an agreement or understanding to that effect.  In its Order the Court concluded "[w]hether Wallach agreed in any manner to be Sabatino's designated driver is a genuine issue for the trier of fact to determine."  Feb. 9 Order at 34.  However, now that Defendant 3090, Inc. has admitted there was no such understanding there is no longer any issue.

In the absence of any promise to undertake the duty of performing a designated driver service, the Court concludes that Wallach can not be liable under the Restatement § 324A framework. Having made no promise, he would not have increased the risk of harm to third parties or undertaken a duty that might have otherwise been owed by another party, such as the commercial alcohol supplier.  Furthermore, Dennis could not have reasonably relied on Wallach's undertaking when 3090, Inc. readily admits there was no understanding between the two individuals.

3090, Inc. and Maui Dive Shop argued at the hearing that Judicial Admission 1 does not alter the factual background of the case because the admission only excludes a promise to be a designated driver, and Wallach could still have undertaken a duty

14

based on the promise to "take care of" Sabatino.  However, Dennis stated numerous times in his deposition that the intent of his question to Wallach and consequent assumption was specifically about whether Wallach would be Sabatino's designated driver. Moreover, Judicial Admission 1 uses the words "*to the effect* that Dr. Wallach was a designated driver," (emphasis added) which precludes 3090, Inc. from avoiding the intent of Judicial Admission 1 by arguing that the admission only applies to the exact term "designated driver."  Finally, Plaintiffs' Complaint specifically alleges that Wallach stated he was Sabatino's designated driver and thus was negligent in allowing her to drive.  Third Amended Complaint ¶ 20.

The Court finds that Defendant Wallach did not make a promise to the effect that he would serve as the designated driver for Carol Ann Sabatino.  In the absence of such a promise, Wallach can not be liable to third persons for the negligent undertaking of a duty as outlined in the Restatement (Second) of Torts § 324A.  Additionally, with Dennis' admission that he had no understanding with Wallach that he would be the designated driver, then clearly there could be no reasonable reliance upon such a promise.  Therefore, the Court GRANTS Defendant Ronald E. Wallach's second Motion for Summary Judgment.

## II.  Causation

Even if the duty element was still in question, another

judicial admission illuminates a glaring deficiency in the causation element of Plaintiffs' original negligence claim against Wallach.   Judicial Admission 4 relates to the crew's perception of Sabatino's intoxication level on the boat.   It states, "Carol Ann Sabatino did not appear intoxicated while on board the Alii Nui on February 13, 2004."   Wallach previously alleged that neither Dennis or crew member Diane Mulkey thought Sabatino was intoxicated.   See Wallach's First Motion for Summary Judgment CSF ¶ 2.   Now, 3090, Inc. has unequivocally admitted that Carol Ann Sabatino did not appear intoxicated while on board the Alii Nui to anyone.   Based on this admission, 3090, Inc.'s position becomes untenable.   3090, Inc. admits that no one believed Sabatino was intoxicated, but maintains Wallach should have taken care of her because Dennis believed that she was acting "bizarre" (climbing from 5 to 8 during the cruise on a 1-10 bizarre scale) and her behavior sent up a yellow flag in his mind.   See Feb. 9 Order at 34; Deposition of Chris Dennis at 15:23-25.

Regarding the causation element, the Court previously held that a genuine issue of material fact exists as to whether Wallach's alleged failure to perform his duty as Sabatino's designated driver may have caused the accident and death of Bournakel.   See Feb. 9 Order at 36.   However, it is beyond dispute that the car accident was a result of Sabatino's elevated

level of intoxication, and not the result of bizarre behavior that Dennis may have observed.[7]  The consequences of allowing an intoxicated individual to drive are foreseeable, but the same can not be said of the consequences of allowing a "bizarre" individual to drive.  See Feb. 9 Order at 36 (citing Ono, 62 Haw. at 140, 612 P.2d at 540-41).

Moreover, the Plaintiffs' Complaint alleges that Wallach, aware that Sabatino was intoxicated, conveyed to the crew that he would serve as Sabatino's designated driver.  Third Amended Complaint ¶ 20. Plaintiffs then allege "[a]s a legal result of the foregoing [among other reasons], Stefan Bournakel was killed."  Id. ¶ 21.  Thus, even Plaintiffs' claim emphasizes that the failure to care for an intoxicated person, not a bizarre person, contributed to the cause of Bournakel's death.

After considering the new judicial admissions, the Court now holds that a reasonable close causal connection between Wallach's conduct and Plaintiffs' injuries does not exist.  For this alternative reason, the Court concludes that Wallach's second Motion for Summary Judgment should be granted.[8]

_____

[7] Dennis explained that one indication of Sabatino's bizarre behavior was her tendency to repeat things, such as pressing him to come and get his teeth whitened.  Deposition of Chris Dennis at 14:8-23.  He also stated that she was outgoing, very happy, and "seemed a little bit overly happy about being on the trip."  Id. at 16:6-9.

[8] The Court notes that in the Feb. 9, 2006 Order, the Court

(Cont.)

17

considered sua sponte the right of Cross-Defendant 3090, Inc. to oppose Wallach's Motion for Summary Judgment in the absence of an opposition from Plaintiffs.  See Feb. 9 Order at 14-21 (Discussion Part I.A.).  Wallach has pending cross-claims against 3090, Inc., but 3090, Inc. has never asserted claims against Wallach.  3090, Inc. answered Wallach's cross-claims by asserting a contributory negligence defense and stating that Wallach or another third party was responsible for any injury that Wallach allegedly suffered.  See Cross-Defendants' Answer and Affirmative Defenses to Cross-Claim of Wallach ¶¶ 11, 15, and 18.

In its initial review, the Court studied a Hawaii Supreme Court decision, Gump v. Wal-Mart, Inc., 93 Haw. 417, 422, 5 P.3d 407, 412 (Haw. 2000), which concluded a co-defendant lost its right to contribution from another co-defendant because it failed to raise the issue of contribution in the pleadings.  The court foreclosed the co-defendant's right pursuant to the Uniform Contribution Among Tortfeasors Act ("UCATA").  See Hawaii Revised Statutes §§ 663-12 and 663-17(c).  However, the Court did not reach the same result in this case as the Gump court did because 3090, Inc.'s Answer to Wallach's cross-claim alleges that Wallach had some responsibility in this case.  For this reason, the Court found that the UCATA did not completely barr 3090, Inc.'s right to oppose Wallach's motion.  However, the UCATA does not explicitly authorize 3090, Inc.'s right to oppose either.  Thus, the Court turned to federal court decisions, where it discovered little precedent and no consensus regarding a cross-defendant's right to oppose a motion for summary judgment by a co-defendant in the absence of an opposition by the plaintiff.

Consequently, the Court evaluated 3090, Inc.'s right to amend its pleadings so as to conform the pleadings with the evidence pursuant to Hawaii Rule of Civil Procedure 15(b).  The Court held that 3090, Inc. was entitled to amend its pleading under Rule 15(b) to assert cross-claims against Wallach, which would have secured its right to oppose the motion.  Under this premise the Court considered 3090, Inc.'s arguments.

The Court notes that "summary judgment is intended to avoid a useless trial before a finder of fact."  Adler v. Federal Republic of Nigeria, 107 F.3d 720, 728 (9th Cir. 1997) (citing Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728-29 (1944)).  The Plaintiffs have repeatedly taken no position in response to Wallach's motions.  Even after Wallach filed a second Motion for Summary Judgment raising this issue, 3090, Inc. has not filed a cross-claim against him, notwithstanding the Court's allowance to amend in its Order and apparent misgivings in its previous analysis.

18

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Wallach's second Motion for Summary Judgment against Plaintiffs' claims.  The Court finds that the recently introduced judicial admissions alter the factual landscape and settle the genuine issues of material fact that previously existed regarding the duty and causation elements of Plaintiffs' negligence claim in Wallach's favor.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 28, 2006.



_____
Alan C. Kay
Sr. United States District Judge

WHITE v. SABATINO, ET AL., Civ. No. 04-00500 ACK/LEK; Civ No. 05-00025 ACK/LEK, ORDER GRANTING DEFENDANT RONALD E. WALLACH'S SECOND MOTION FOR SUMMARY JUDGMENT.